IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 6-16-CR-143 RP |
| | § | |
| HAROLD ARCHIE LINDSAY | § | |

## ORDER DENYING MOTION TO SUPPRESS

Before the Court is Defendant Harold Archie Lindsay's Motion to Suppress and Quash Search Warrant filed July 5, 2016, (Dkt. 29), and the Government's Response to Defendant's Motion to Suppress filed July 18, 2016, (Dkt. 31). Additionally, on August 4, 2016, the Court held an evidentiary hearing on this matter (the "August 4 hearing"). After considering the filings in this case, along with the testimony and arguments presented at the August 4 hearing, the Court finds that the motion to suppress should be denied for the reasons to follow.

## I. BACKGROUND

On April 13, 2016, a Bell County Justice of the Peace, based on an affidavit sworn to by Detective April Jones ("Affiant"), signed a warrant to search Defendant's apartment for cocaine. Affiant executed the search warrant later that same day. She did not find cocaine, but did find two handguns. Defendant was subsequently federally indicted for Possession of a Firearm by a Convicted Felon, 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Defendant now argues that the evidence obtained pursuant to the warrant should be suppressed.

## II. APPLICABLE LAW

### A. The Good-Faith Exception

The so-called "good faith exception," announced by the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984), stands for the proposition that "evidence obtained by officers in objectively reasonable good-faith reliance upon a search warrant is admissible, even though the

1

warrant was unsupported by probable cause." *United States v. Laury*, 985 F.2d 1293, 1311 (5th Cir. 1993) (citing *Leon*, 468 U.S. at 922–23). However, "it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Id.* at 922–23. The Supreme Court posited four circumstances in which that would be the case:

> [I]f the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth . . . .[if] the issuing magistrate wholly abandoned his judicial role . . . [if the] affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable . . . [or if] a warrant [is] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*Id.* at 923 (citations omitted).

When the issue in question is whether the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," the Fifth Circuit asks if the affidavit was "bare bones," i.e., "contain[ing] wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *See United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992). If not, the good-faith exception applies, and the analysis ends. *See e.g.*, *United States v. Cisneros*, 112 F.3d 1272, 1278 (5th Cir. 1997) ("An officer may rely in good faith on the validity of a warrant so long as the warrant is supported by more than a 'bare bones affidavit' . . . [a]n affidavit is "bare bones" if it so deficient in demonstrating probable cause that it renders an officer's belief in its existence completely unreasonable."); *United States v. Massi*, 761 F.3d 512, 530 (5th Cir. 2014) ("When a warrant is supported by more than a 'bare bones' affidavit, officers may rely in good faith on the warrant's validity.").

Accordingly, an affidavit may set out facts which are sufficient for good-faith reliance but insufficient for probable cause. *See e.g.*, *Leon*, 468 U.S. at 915 ("Even if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that,

notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable cause determination reflected an improper analysis of the totality of the circumstances."); *United States v. Brown*, 299 F. App'x 407, 408 (5th Cir. 2008) ("In the instant case, the warrant was not based on a "bare bones" affidavit . . . [e]ven if we were to find that the affidavit was insufficient to establish probable cause, it still is sufficient to establish the 'facial validity' of the warrant."); *United States v. McKnight*, 953 F.2d 898, 905 (5th Cir. 1992) ("[E]ven assuming that probable cause to issue the warrant may be open to some question, the warrant's facial validity under *Leon* is not.").

### III. THE PARTIES' ARGUMENTS

Defendant has alleged that the affidavit underlying the warrant in the instant case constituted a "bare bones" affidavit and that the warrant was so facially deficient that officers could not have reasonably presumed it to be valid. (Dkt. 29 at 6). The affidavit in relevant part provides as follows:

> Within the 48-hour period preceding the preparation of this affidavit, the affiant provided the confidential informant confidential fund money to purchase a quantity of powder cocaine from **Harold Archie Lindsay III** at **2214 Andover Dr. #3, Killeen, Bell County, Texas**. The CI met with **Harold Archie Lindsay III** and completed the sale of powder. The confidential informant advised that upon completion of the sale the CI observed **Harold Archie Lindsay III** to be to be [sic] in care, custody, and control of a quantity of powder cocaine.

(Dkt. 29 at 13) (emphasis in affidavit).

Defendant's objections focus on the lack of detail. Broadly speaking, he argues that nothing in the affidavit addresses the CI's reliability, credibility, and knowledge, the CI's relationship with Affiant or Defendant, how the CI can identify Defendant, whether Affiant was present at the scene of or observed the drug buy, how the CI can identify cocaine or that the substance the CI purchased was cocaine, whether Affiant frisked the CI before or after the alleged buy, how much money was

given for the alleged buy, or any of the details of what actually happened during the buy. (Dkt. 29 at 3–6).

The Government has responded that Affiant's work experience, along with her "detailed account of a drug buy from [Defendant] using a CI" are "all that are necessary for [a] judge to make a probable cause determination." (Dkt. 31 at 4). The magistrate here "saw that [Affiant] was familiar with the facts alleged, because she in fact provided the CI the buy money, and was free to infer the source's credibility because . . . Affiant actually orchestrated the drug buy." (Dkt. 31 at 4).

## IV. DISCUSSION

In reviewing a motion to suppress, the Court "engage[s] in a two-part inquiry: (1) whether the good-faith exception to the exclusionary rule applies; and (2) whether the warrant was supported by probable cause." *Laury*, 985 F.2d at 1311 (citations omitted). "Principles of judicial restraint and precedent dictate that, in most cases, [the Court] should not reach the probable cause issue if a decision on the admissibility of evidence under the good-faith exception of *Leon* will resolve the matter." *United States v. Craig*, 861 F.2d 818, 820 (1988). "The only instances in which this maxim should not be followed are those in which the resolution of a 'novel question of law . . . is necessary to guide future action by law enforcement officers and magistrates.'" *Id.* at 820–21 (quoting *Illinois v. Gates,* 462 U.S. 213, 264 (1983) (White, J., concurring in the judgment)). This case presents no such novel question and so the Court will first address the applicability of the good-faith exception.

### A. Whether the Affidavit is Bare Bones

#### i. What the Affidavit Actually Communicates

The contested portion of the affidavit consists of three sentences, and the Court must address what information those sentences actually convey as well as determine the bases for crediting that information. *See United States v. Ventresca*, 380 U.S. 102, 108–09 (1965) ("[P]robable cause can[not] be made out by affidavits which are purely conclusory, stating only the affiant's or an

informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based . . . [this includes giving a] reason for crediting the source of the information." (citation omitted)).

The first sentence states that Affiant gave the CI confidential fund money to buy cocaine from Defendant at 2214 Andover Dr. #3, Killeen, Bell County, Texas. The basis for this information is Affiant's personal knowledge, which means that the information is presumptively reliable. *See United States v. May*, 819 F.2d 531, 536 (5th Cir. 1987) ("Statements by law enforcement officials based upon personal observation or upon the observation of fellow officers participating in the same investigation are entitled to a presumption of reliability.").

Next, the third sentence expresses that the CI "advised that upon completion of the sale" the CI had observed Defendant to be in possession of a quantity of cocaine. The source of the facts in the third sentence is therefore the CI's hearsay, meaning that the CI's "'veracity,' 'reliability,' and 'basis of knowledge'" must be assessed. *See Mack v. City of Abilene*, 461 F.3d 547, 552 (5th Cir. 2006) (quoting *Gates*, 462 U.S. at 230).

However, in comparison to the first and third sentences, the second sentence does not communicate the basis for Affiant's statement that "[t]he CI met with [Defendant] and completed the sale of powder." It does not explicitly assert that Affiant observed the meeting between the CI and Defendant or that the CI told Affiant about the meeting. It also does not directly express that

these events occurred at the address listed. The Court must therefore decide how the issuing magistrate could have interpreted this language.[1]

In deciding how to read an affidavit an issuing magistrate is permitted to "draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant." *Gates*, 462 U.S. at 240. In doing so, the magistrate is to remember that "affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." *May*, 819 F.2d at 535 (citation omitted). Thus, "affidavit[s] must be read . . . with a preference toward the warrant process" and "hypertechnical consideration" is to be avoided. *Christian v. McKaskle*, 731 F.2d 1196, 1200 (5th Cir. 1984).

Heeding these guidelines, the Court finds that, reading the affidavit in a commonsense, realistic way, the issuing magistrate could have reasonably inferred that the basis for the facts stated in the second sentence of the affidavit was the CI's hearsay. The Court does not believe the same can be said as to inferring that Affiant personally observed the CI meet with and buy cocaine from Defendant.[2] Further, when read in a commonsense manner, the juxtaposition of the first and second sentence allows the reasonable inference that the CI informed Affiant that the meeting and purchase took place at the address listed. The first sentence states that Affiant gave the CI confidential fund

---

[1] *See, e.g., May*, 819 F.2d 531, 536 ("According to [the defendant], the affiant's failure to specify how they got their information deprived the judicial officer who issued the search warrant of grounds to adequately scrutinize the reliability of that information . . . [a]lthough the affidavit does not specifically state as much, an individual reading the affidavit could reasonably infer either . . . that the information was based on [the affiants'] personal observations [or] that the affiants had received their information from colleagues"; because "[s]tatements by law enforcement officials based upon personal observation or upon the observation of fellow officers participating in the same investigation are entitled to a presumption of reliability," a "commonsense reading of the affidavit" precluded the defendant's challenge under either interpretation); *United States v. Chesher*, 678 F.2d 1353, 1359 (9th Cir. 1982) (assessing an affiant police officer's statement in his affidavit that "as a result of my experience and conversations with CRI's (confidential and reliable informants) 1, 2, and 3, I know that [DEFENDANT] is a member of the HELLS ANGELS MOTORCYCLE CLUB," noting that "it is unclear from the face of the affidavit whether [the affiant officer] was relying exclusively on the hearsay information from the informants, or had personal knowledge based on his own experience as well" but when "[h]eeding the guidelines of [the Supreme Court to read an affidavit in a common sense and realistic manner]," concluding that [the affiant's] statement was made from personal knowledge" and "[v]iewed as such, the affidavit is adequate to support the magistrate's finding of probable cause").

[2] The question, in the good-faith context, may more properly be what a "reasonably competent officer in [Affiant's] position may have believed that [the information provided in the affidavit]" allowed a magistrate to reasonably infer. *See Bennett v. City of Grand Prairie*, 883 F.2d 400, 409 (5th Cir. 1989). It is hard to imagine a situation in which application of the two standards would not produce the same outcome, and the Court does not discern such circumstances here.

money to purchase cocaine from Defendant at a very specific address and the second sentence, stating that the CI then met with Defendant and purchased cocaine, is necessarily colored by that understanding.

In sum, the Court treats the three sentences of the affidavit as follows: the first sentence describes the personal observations of Affiant and the information is presumptively reliable. *See May*, 819 F.2d at 536. The second and third sentences convey information passed on to Affiant from the CI, i.e., the CI's hearsay.[3]

### ii. The Informant's Veracity, Reliability, and Basis of Knowledge

"An affidavit may rely on hearsay—information not within the personal knowledge of the affiant, such as an informant's statement—as long as the affidavit presents a 'substantial basis for crediting the hearsay.'" *Laury,* 985 F.2d at 1312 (quoting *Gates,* 462 U.S. at 242). As already mentioned, "[a]n informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report." *See Mack*, 461 F.3d at 552 (quoting *Gates*, 462 U.S. at 230). "Veracity and reliability can be distinct considerations," but where, as here, "there is no fact in the affidavit that establishes the general truthfulness of the informant such as his standing in the community or his reputation for veracity," the Court "need not concern [itself] with semantics." *United States v. Jackson*, 818 F.2d 345, 348 n.5 (5th Cir. 1987).

An informant's basis of knowledge is sufficiently established when the statement conveys that the informant is relaying first-hand observations. *See, e.g.*, *Mack*, 461 F.3d at 552 ("Here, the informant's report was based on a direct, personal observation . . . establish[ing] the informant's basis of knowledge"); *United States v. Austin*, 35 F.3d 89, 89 (5th Cir. 1994) ("The personal

---

[3] Even if the Court were to find it reasonably inferable from the second sentence that Affiant had personally observed the facts alleged therein, the Court's ultimate decision—that the affidavit is not bare bones—would remain the same. Additionally, the source of the information in the third sentence is clearly the CI's hearsay. It is also the information that most plainly establishes that Defendant had in his possession at the location identified an additional amount of cocaine. As a result, whatever the Court's decision regarding the second sentence, the Court would still likely be required to assess the CI's veracity, reliability, and basis of knowledge in addressing Defendant's arguments as applied to the third sentence.

observations of a confidential informant (CI), together with a basis for finding that he was a reliable source of information, can provide the issuing "magistrate with more than a 'bare bones' affidavit."). The CI's statements here communicated that she had personally observed Defendant in possession of and selling her[4] cocaine. That leaves the question of reliability.

"The reliability of an informant may be established in a number of ways." *Jackson*, 818 F.2d at 348. "[T]he fundamental inquiry is whether the underlying circumstances show that the informant's information is 'reliable.'" 1 W. LaFave, Search and Seizure § 3.3(c) (5th ed.). One "characteristic[] of reliability" that the Fifth Circuit has recognized is an informant's "[aware]ness of any consequences for providing false information." *See Jackson*, 818 F.2d at 349. Another is that the informant's statement is against their own penal interest. *See United States v. McKeever*, 5 F.3d 863, 866 (5th Cir. 1993). The rationales behind these indicia of reliability are implicated by the facts of this case, so the Court examines them below.

First, in *United States v. Harris*, a four-member plurality of the Supreme Court assessed an informant's admission that he had been buying illicit liquor on certain premises, and found that "[a]dmissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search." *United States v. Harris*, 403 U.S. 573, 583 (1971). "That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct." *Id.* at 583–84. Still, "admissions of crime do not always lend credibility to contemporaneous or later accusations of another." *Id.* at 584. Generally, then, "[a] CI's statements [being] against his own penal interest amounts to substantial corroboration," e.g., statements that the informant had purchased marijuana from the suspect. *McKeever*, 5 F.3d at 865. However, this rationale does not always apply with full

---

[4] Affiant's testimony at the August 4 hearing establishes that the CI is a "she."

8

force, such as when the informant makes the statement to "curry favor with the police." *United States v. Kolodziej*, 712 F.2d 975, 978 (5th Cir. 1983).

Second, an informant's awareness of the fact that there may be consequences for providing false information is an indicium of reliability. *See Adams v. Williams*, 407 U.S. 143, 146–47 (1972)); *Jackson*, 818 F.2d at 348–49 (citing *United States v. Phillips*, 727 F.2d 392, 398 (5th Cir. 1984)); *see also United States v. Donato*, 250 F. App'x 117, 118 (5th Cir. 2007) (finding reliability of informant bolstered when "the informant was aware that incorrect or false information could affect his chances for leniency on pending charges and subject him to criminal liability"); *United States v. Callies*, 54 F. App'x 793, 793 (5th Cir. 2002) (assessing as one factor in the totality of the circumstances that "[t]he affidavits further indicated that the CI was made aware of possible criminal consequences for providing false information"). As explained by the Fifth Circuit in *Phillips,* the Supreme Court in *Adams* "held that one indication of the [informant in *Adams*'] reliability was the fact that, [under state law], '[he] might have been subject to immediate arrest for making a false complaint had [the police officer's] investigation proved [his] tip [to be] incorrect.'" *Phillips*, 727 F.2d at 398 (quoting *Adams*, 407 U.S. at 146–47). The Fifth Circuit also pointed out that the Supreme Court had determined this suggested reliability despite the fact that the informant in *Adams* "might not have been aware that he could have been prosecuted for making a false statement." *See id.* Comparatively, the informant in *Phillips* had given her statement in the form of a signed affidavit which "explicitly provided that she was subject to prosecution for false statements or representations," making the "indication of reliability . . . even stronger in the instant case." *Id.* This "sworn statement made by an informant who was aware that she would be subject to prosecution for making a false statement [] was sufficiently reliable." *Jackson*, 818 F.2d at 348–49.

The facts conveyed in the instant affidavit do not fit neatly into either of the two categories above. The CI's statements are not as directly against penal interest as in the prototypical case, given

9

that the CI carried out the purchase of cocaine as directed by and with confidential fund money provided by Affiant, a police officer. Nor is there any explicit statement in the affidavit that the CI was aware of the potential liability which might attach specific to her provision of false information. But a commonsense reading of the affidavit does not suggest that the reliability to be assigned the CI here is as minimal as the reliability assigned an anonymous tipster who simply states that "Person X is selling cocaine."

Here, the CI was given confidential fund money by Affiant, a police officer, for the purpose of buying cocaine from Defendant at 2214 Andover Drive, Apartment #3. The CI then told Affiant that she had met with Defendant and carried out that purchase. The CI also advised Affiant that after completing the purchase, she had seen Defendant in possession of more cocaine. Given these circumstances, the Court does not believe it unreasonable to infer that the CI was aware that negative consequences could be associated with lying to Affiant about how and where she spent the confidential fund money provided to her for the purpose of carrying out an evidence-gathering drug buy. *Cf. United States v. Casper*, 536 F.3d 409, 415 & n.5 (5th Cir. 2008) (in the reasonable suspicion context, after holding that "where instant caller identification allows the police to trace the identity of an anonymous telephone informant, the ready identifiability of the caller increases the reliability of such tips," disposing of defendant's argument that the question should be "whether the informant knows he has opened himself up to liability for false tips" when making an anonymous phone call to the police because "[i]nstant caller identification is so pervasive today that no one fails to grasp that the police, who have long been able to trace a call, are able to capture the number and initiate a trace" (judgment vacated on different grounds)); 2 W. LaFave, *Search & Seizure* § 3.3(c) (5th ed.) ("[T]here are cases in which incriminating remarks do not actually incriminate the speaker beyond what he is aware the police already know and can prove about him, but where reliability flows from the fact that the informant knows it will be the worse for him if it turns out that his

10

information is false."). Additionally, Texas law does make it a crime to "with intent to deceive . . . knowingly make[] a false statement that is material to a criminal investigation" to a peace officer conducting the investigation. *See* Tex. Penal Code Ann. § 37.08(a). Whether this was known to the CI, it provides at least some additional indicia of reliability. *See Phillips*, 727 F.2d at 398.

Further, it is reasonable to infer from the affidavit that the Affiant knew the CI's identity, particularly because Affiant was willing to give the CI confidential fund money. Unlike an anonymous informant, the CI could therefore be tracked down and held accountable for providing false information. *Cf. Casper*, 536 F.3d at 415 (discussing the greater reliability to be attached to anonymous tipsters when they can be readily identified and, if necessary, held accountable for a false tip).

The affidavit therefore conveyed the CI's basis of knowledge as well as some indicia of reliability. This distinguishes the instant affidavit from those the Fifth Circuit found to be "bare bones" in *United States v. Barrington* and *United States v. Jackson*, both of which Defendant raised at the August 4 hearing. In *Barrington*, the affidavit stated only that the affiant had "received information from a confidential informant" who was "known to [the officer] and has provided information in the past that has led to arrest and convictions." *United States v. Barrington*, 806 F.2d 529, 531 (5th Cir. 1986). In *Jackson*, the affidavit was "*totally* lacking in indicia of reliability and basis of knowledge." *Jackson*, 818 F.2d at 350 n.8 (emphasis added). The affidavit here is not so lacking as the affidavits in those cases.

### iii. *McKaskle*, *McKnight*, and *Gallegos*

Finally, the Fifth Circuit has found probable cause obtained or at least the good-faith exception applied in a number of cases involving affidavits quite similar to the one at issue. In *Christian v. McKaskle*, a pre-*Leon* case, the Fifth Circuit found that the following affidavit established probable cause supporting a search warrant:

> On this day an informant, whose name is withheld for security reasons, told affiant that said suspected party is now keeping and possessing what the affiant believed to be methamphetamine in said suspected vehicle and stated to affiant as an underlying circumstance supporting that conclusion that with [sic] the past 24 hours, such informant saw controlled substance. Affiant believes that this information given them is reliable and that such informant is credible for the following reason: such informant, on two separate occasions during the past year, gave affiant accurate reports about law violations.

*Christian v. McKaskle*, 731 F.2d 1196, 1198 (5th Cir. 1984).

First, the "explicit claim of [the informant's] past reliability" was sufficient to establish the informant's reliability for purposes of finding probable cause. *Id.* at 1200. As for the informant's basis of knowledge, the Fifth Circuit explained that "[t]he affidavit must be read in a realistic and common-sense manner and with a preference toward the warrant process . . . when this is done and hypertechnical consideration of the affidavit is avoided, the affidavit indicates that the informant had personally observed a specific drug in [the defendant's] car within the past twenty-four hours." *Id.* (citations omitted). The court also noted that it did not matter that the affidavit failed to "reveal how it was known that the substance was methamphetamine." *Id.*

Eight years later, in *United States v. McKnight*, the Fifth Circuit assessed an affidavit "nearly identical in content" to the affidavit from *McKaskle. See United States v. McKnight*, 953 F.2d 898, 905 (5th Cir. 1992). The court explained that "construing the affidavit in a common sense manner, probable cause is at the very least most likely supplied by [it]," but refrained from "conclusively decid[ing]" the question of probable cause "because the affidavit and resulting warrant clearly qualif[ied] for the good-faith exception to the probable cause requirement established in [*Leon*]." *See id.* (citations omitted).

Lastly, in *United States v. Gallegos*, the Fifth Circuit evaluated an affidavit it considered "virtually identical" to the affidavit in *McKnight. United States v. Gallegos*, 239 F. App'x 890, 896 (5th Cir. 2007). In describing the *McKnight* affidavit, the *Gallegos* court reduced it to its most basic

elements: "(1) that the informant had furnished the officer information in the past and had proven reliable and true and (2) that the informant had seen [drugs] at a specific house in the past seventy-two hours." *Id.* (citing *McKnight*, 953 F.2d at 904–05). These facts alone, the *Gallegos* court reiterated, "made probable cause 'at the very least most likely supplied,'" and so "just as *McKnight's* affidavit was not a bare bones affidavit, neither [was] the one in [*Gallegos*]." *Id.* (quoting *McKnight*, 953 F.2d at 905). The Fifth Circuit also rejected the defendant's argument that the affidavit failed to establish a nexus between the premises to be searched and the drugs because "the affidavit stated [an individual] possessed drugs at the residence," which was "evidence of a nexus between the narcotics and the residence." *Id.* at 896. Further, the *Gallegos* court explained that simply because "drugs [can be] quickly consumed" does not mean that "[i]nformation that someone possessed drugs forty-eight hours earlier . . . entail[s] the conclusion that the information was so dated that no reasonable officer could have believed that the affidavit established probable cause." *Id.*[5]

That the affidavits based upon informants' reports in *McKaskle*, *McKnight*, and *Gallegos* furnished either probable cause or "at the very least most likely" probable cause indicates that the affidavit in this case, containing perhaps a lesser showing of an informant's reliability but the same first-hand basis of knowledge, is more than bare bones.

---

[5] The informant in *Gallegos* had alleged that an individual *in control* of the residence *possessed* drugs at the residence, *Gallegos*, 239 F. App'x at 892, and it might be arguable that probable cause to search the residence two days later would not have existed if the affidavit had merely stated that someone with no connection to the residence had been seen at the residence in possession of drugs. In this case, the CI's statement contains no allegation that Defendant lived at or had control of the apartment in question, although the affidavit does assert without any other apparent basis that Defendant had control over it. But an affidavit in support of a search warrant does not require "identify[ing] the person in charge of the premises or nam[ing] the person in possession or any other person"; instead, "[t]he critical element in a reasonable search is . . . that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 & n.6 (1978). The fact that an apartment unit is used for drug trafficking, and not simply that someone was seen possessing drugs inside it, is sufficient to support a search for drugs two days later—even if the person selling the drugs is unidentified and the owner of the premises is unknown. *See, e.g.*, *United States v. Archibald*, 685 F.3d 553, 558 (6th Cir. 2012) (finding that a single controlled buy of drugs at an apartment established probable cause to believe that drugs were present at that apartment and that the probable cause did not go stale in the three days between the buy and the issuance of a search warrant); *United States v. Pinson*, 321 F.3d 558, 565 (6th Cir. 2003) (same).

### iv. Conclusion

For the foregoing reasons, and keeping in mind that "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination," *Leon*, 468 U.S. at 921, and that the affidavit must be read "in a realistic and common-sense manner," *McKaskle*, 731 F.2d at 1200, the Court finds that this affidavit was more than bare bones. The information that came from Affiant's personal observations could be presumed reliable, and the affidavit otherwise provided the CI's statements, along with indicia of the CI's basis of knowledge and reliability, such that the magistrate could make an independent decision as to whether to credit those statements. *See Gates*, 462 U.S. at 239; *Satterwhite*, 980 F.3d at 321. That there was no information to suggest that the CI could independently identify Defendant was not material to whether there was probable cause to search the apartment located at the listed address. *See* note 5 *supra*. The warrant was not void for staleness, nor was there a nexus lacking between the cocaine and the place to be searched. *See Gallegos*, 239 F. App'x at 896; *Archibald*, 685 F.3d 553, 558. And the fact that a reviewing court might later disagree with the magistrate's decision that this particular affidavit supplied probable cause is not determinative of whether it is bare bones. *See Leon*, 468 U.S. 915; *McKnight*, 953 F.2d at 905. The good-faith exception therefore applies.

Because the Court finds that the good-faith exception applies, it does not reach the question of probable cause. *See Laury*, 985 F.2d at 1311.

### v. A Final Word

According to Affiant's testimony at the August 4 hearing, prior to seeking a warrant Affiant had:

- Used the CI for previous cases.
- Been informed by the CI that the CI was familiar with Defendant and that Defendant was selling powder cocaine from Defendant's residence, which address the CI also provided.

- Recognized Defendant as being the individual residing at the address in question based on photographs from previous arrests.
- Been advised by the CI that the CI was familiar with cocaine and the way it is packaged for resale due to having purchased cocaine in the past.
- Executed three controlled buys of cocaine from Defendant using the CI, wherein Affiant frisked the CI before and after each buy and observed the buys insofar as seeing the CI enter and exit Defendant's home; only the third controlled buy was described in the affidavit.
- Been informed by the CI that Defendant kept his cocaine in a small case, which the CI had seen sitting on a kitchen countertop.
- Seen something in Defendant's back pocket when he and the CI exited the residence at the end of the third controlled buy; the CI later informed Affiant that she had seen a firearm in Defendant's pocket and that he had pulled it out and showed it to her.
- Tested the powder obtained through the controlled buys to confirm that it was cocaine.

None of this information was included in the affidavit. Affiant testified that the reason she had not included any of these corroborating facts was because she was in a hurry to get the warrant before Defendant had a chance to get rid of the cocaine. But rushing the process left the affidavit at significant risk of being insufficient. Such risk is cast into stark relief when compared to the minor effort that would have been required to simply place on the page what Affiant knew, thereby rendering the affidavit indisputably satisfactory. This is particularly true given that Affiant testified it took her at least two hours to type the affidavit out and read it; surely the inclusion of some or all of the above facts could have been accomplished in that time frame.

"It is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it . . . [b]ut ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should." *Malley v. Briggs*, 475 U.S. 335, 345–46 (1986). Thus, it is incumbent upon an officer "applying for [a] warrant to minimize this danger by exercising reasonable professional judgment." *Id.* at 346. Reasonable professional judgment is to err on the side of caution. As the Sixth Circuit has put it:

> Police should be aware that failure to corroborate all that can easily
> be corroborated incurs two dangers. The first is to risk that a warrant
> will not issue where it should. The second is to risk the loss, at trial or
> on appeal, of what has been gained with effort in the field.

*United States v. Allen*, 211 F.3d 970, 976 (2000).

Prudent officers are therefore advised to corroborate all that can be corroborated, and to provide a magistrate with the most detail reasonably possible when seeking issuance of a warrant.

**B. Whether the Warrant is Facially Deficient**

Defendant has challenged the warrant in this case as facially deficient. (Dkt. 29 at 3, 6). However, beyond simply stating this challenge, Defendant has not articulated how the warrant is deficient. The Court does not see that the warrant fails 'to particularize the place to be searched or the things to be seized' such that 'the executing officers cannot reasonably presume it to be valid.'" *Massi*, 761 F.3d at 530–31. Defendant's challenge on this ground therefore fails.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion to Suppress and Quash Search Warrant filed July 5, 2016, (Dkt. 29), is **DENIED**.

**SIGNED** on August 30, 2016.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE